UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BOLIN, LOUIS COOK,
BRIAN FARLIN, JAMES HOUGH,
and ANDREW OWENS,

    Plaintiffs,

v

TOWNSHIP OF FLUSHING,
DALE STEVENSON, TERRY
PECK, MARK PURKEY, WILLIAM
NOECKER, SCOTT MINAUDO and
MICHAEL GARDNER, in their Individual
and Official Capacities,

    Defendants.

Case No.: 12-
Hon. Judge

_____/
LEONARD & KRUSE, P.C.
BY:    NORBERT B. LEONARD (P40056)
        KELLY A. KRUSE (P45538)
Attorneys for Plaintiffs
4190 Telegraph Road
Suite 3500
Bloomfield Hills, Michigan 48302
248/594.7500
_____/

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved
civil action arising out of the transaction
or occurrence alleged in the Complaint.

/s/ Kelly A. Kruse (P45538)
Kelly A. Kruse  (P45538)

**NOW COME** Plaintiffs, Mark Bolin, Louis Cook, Brian Farlin, James Hough and

Andrew Owens, by and through their attorneys, Leonard & Kruse, P.C. and as and for their

-1-

Complaint against the Defendants state as follows:

1. Plaintiffs, Bolin, Farlin, Hough and Owens are residents of Genesee County, Michigan. Plaintiff, Cook, is a resident of Lapeer County, Michigan. All of the Plaintiffs are police officers who were formerly employed by Flushing Township.

2. Defendant, Township of Flushing, is a governmental entity located in Genesee County, Michigan.

3. Defendants, Noecker, Peck, Purkey, Minaudo and Gardner are current and/or former members of the Flushing Township Board of Trustees.

4. Defendant, Peck, is also the Township Supervisor and Defendant, Noecker, is also the Township Treasurer.

5. Defendant, Stevenson, is the former Flushing Township Chief of Police.

6. The Court has jurisdiction over this matter pursuant to 28 USC §1331 and 42 U.S.C. §1983.

## GENERAL ALLEGATIONS

7. At all times relevant hereto, Plaintiffs were employed by Flushing Township as police officers.

8. At all times relevant hereto, Officer Cook was also the president of the Flushing Township patrol officers' union.

9. In 2008, Defendants, Noeker, Purkey, Minaudo and Gardner, were elected to the Flushing Township Board of Trustees.

10. Prior to this time, Plaintiffs campaigned against these candidates

11. In November, 2009, a recall election concerning Defendants, Noecker, Purkey, Gardner and Minaudo, occurred.

12. The Police Officer's Union as well as the individual Plaintiffs herein supported the efforts to recall these Defendants.

13. Shortly before the election, Officer Hough, while off duty, was placing recall signs within the township at pre-approved locations.

14. While Officer Hough was placing the recall signs, a resident became upset about the placement of the signs and swore at Officer Hough. Shortly thereafter, Officer Hough noticed that some of the recall signs he had placed had been removed.

15. Accordingly, Officer Hough contacted an on-duty police officer to report the signs having been stolen.

16. Within minutes of making this phone call, Officer Hough witnessed Defendant, Noecker, appear on the scene and converse with the man who had sworn at Officer Hough.

17. Mr. Noecker then approached Officer Hough's vehicle and accused Officer Hough of harassing township residents. Next, Defendant, Noecker, placed a telephone call in which he loudly exclaimed that he intended to have the state police investigate the incident and have the entire Board of Trustees come to the scene of this incident.

18. Within minutes, Defendants, Minaudo, Gardner and Purkey appeared.

19. As Officer Hough was starting his vehicle in an effort to depart from the scene,

Defendants, Purkey and Minaudo stood on either side of the vehicle and accused Officer Hough of putting signs in resident's yards without permission.

20. Officer Hough had permission to place the signs he had placed.

21. The recall was unsuccessful and, following the November, 2009 election, Defendants, Noecker, Purkey, Gardner and Minaudo, remained on the Board of Trustees.

22. These Defendants campaigned, in part, on a platform critical of the operation of the Flushing Township police department.

23. The Plaintiffs supported the opponents of these Defendants.

24. On March 9, 2010, shortly after being elected, Defendant, Peck, told Officer Bolin that the officers should not have picked a political side.

25. Shortly after he was elected, Defendant, Gardner, advised Plaintiffs that he intended to "bust up the union."

26. Thereafter, the police department became subject to unwarranted lay-offs.

27. On July 10, 2010, Plaintiff, Farlin, suffered an off-duty injury which resulted in an extended leave of absence.  By April, 2011, Officer Farlin was sufficiently recovered from his injuries to return to work.

28. On or about January 7, 2011, Defendant, Stevenson cautioned Officer Cook, that he couldn't "crap in someone's backyard and expect them to do you any favors."

29. In late February/early March, 2011, a petition was filed to recall Defendants, Noecker and Gardner, from their positions as Board members.

30. The recall petitions were filed by Flushing Township resident, Jared Staley.

31. On or about February 28, 2011, Defendant, Stevenson, advised Officer Cook that his friendship and association with Mr. Staley would bring down the department.

32. Plaintiff, Cook, and Mr. Staley are social friends.

33. The Plaintiffs, supported the recall efforts initiated by Mr. Staley.

34. On or about March 11, 2011, Defendant, Stevenson, told Officer Cook, that Defendant, Stevenson, was disgusted by Officer Cook's association with Mr. Staley and his support of the recall effort. Defendant, Stevenson further stated that "your association with someone who is actively trying to unseat two members of the board is political nonsense and is killing us."

35. The conversation between Defendant, Stevenson, Officer Owens and Officer Cook lasted over an hour and was characterized by repeated admonitions by Defendant, Stevenson, that Officer Cook should refrain from supporting the recall effort as that support might "sink" the department.

36. During 2011, Defendant, Peck, advised Officer Bolin that Defendant, Noecker, was taking the recall efforts personally and that the actions of the Plaintiffs would not be forgotten.

37. During April, 2011, Officer Farlin participated in a conversation with Defendant, Stevenson, wherein the Defendant made multiple negative comments concerning the Plaintiff Officers who had backed the recall petitions.

38. Although Officer Farlin was physically able to return to work in April, 2011, he was not brought back to work at that time. Rather, he was given a lay-off notice and advised that the Township lacked the funds to return him to work.

39. Officer Farlin was further advised by Defendant, Stevenson, that another reason he would not be allowed to return to work was Defendant, Stevenson's, belief that Officer Farlin had been critical of the Chief and his qualifications for the position.

40. On another occasion, Defendant, Stevenson, advised Officer Bolin that Officer Farlin would not be permitted to return to work because "he keeps kicking me in the balls."

41. On or about May 2, 2011, Defendant, Stevenson, told Officer Bolin that the Board had political axes to grind in connection with the recall and the continued viability of the police department.

42. In May, 2011, Defendant, Stevenson, told Officer Farlin that "like I told Cook, you can't stick your thumb in their eye and not expect them to retaliate."

43. Prior to the 2011 recall election, Defendant, Noecker, questioned Officer Owens concerning which officers were supportive of the recall effort and warned Officer Owens not to assist Mr. Staley in his efforts to recall Board members.

44. On several other occasions, Defendant, Peck, told Officer Owens that his co-workers support of the recall would have a negative impact on their employment.

45. Officer Owens was also questioned by Defendant, Stevenson, about his involvement with and relationship to Mr. Staley.

46. In November, 2011, the residents of Flushing Township passed a millage which provided adequate funding to meet the expenses of the Flushing Township police department.

47. The recalls of Defendants, Noecker and Mike Gardner, were defeated and these Defendants remained in office.

48. On or about December 13, 2011, Officer Cook was instructed to meet with Defendant, Peck.

49. During that meeting, Defendant, Peck, told Officer Cook that the patrol officers did not yet have a contract with the Township because of the political stance taken by the union's members.

50. Over the next several months, the Township continued to take various steps to alter the terms and conditions of the Plaintiff's employment in retaliation for the Plaintiff's political affiliations and in retaliation for the exercise of their First Amendment rights.

51. Throughout the period in question, the Plaintiffs were issued various disciplinary notices in retaliation for their political affiliations and exercise of their First Amendment rights.

52. On February 1, 2012, Defendant, Stevenson, accused Officer Bolin of being insubordinate for supporting the recall efforts. Defendant, Stevenson, then advised Officer Bolin that he would be issued a poor performance evaluation because of his political affiliations and told him that there are consequences to your "freedom of speech."

53. On or about February 1, 2012, Officer Cook met with Defendant, Stevenson, for Officer Cook's annual review. During the evaluation, Defendant, Stevenson, advised Officer Cook that he was being rated as "needs improvement" in light of his continued political affiliations.

54. On or about February 6, 2012, Defendant, Peck, advised Officer Bolin that the Plaintiffs would suffer because of their political affiliations and that the officers should not have exercised their rights to become involved in the recall campaigns. Defendant, Peck, also told Officer Bolin that he should not file a complaint with the Department of Civil Rights because it would hurt the township. Finally, Peck advised Officer Bolin that the entire police department would suffer the consequences of their votes on the recall.

55. On February 9, 2012, the Board of Trustees voted to eliminate the Township's police department - with the exception of Defendant, Stevenson and the school resource officer - and to out-source the police department to the Genesee County Sheriff's department.

56. Defendants, Purkey, Gardner, Peck, Minaudo and Noecker, voted in favor of the motion. Two other board members voted against it.

57. Despite the successful police millage, the Board claimed that this move was necessitated by budgetary considerations.

58. On February 10, 2012, all members of the Flushing Township Police Department except Defendant, Stevenson, and the school resource officer received lay-off notices effective February 27, 2012.

## COUNT I
## VIOLATION OF RIGHTS SECURED BY THE
## FIRST AMENDMENT

59. Plaintiff restates and realleges paragraphs one through fifty-eight as if fully set forth herein and in further support of their cause of action state as follows:

60. At all times relevant hereto, the speech in which Plaintiffs engaged was speech which is protected under the First Amendment of the United States Constitution.

61. At all times relevant hereto, the speech in which Plaintiffs engaged was spoken in their capacities as private citizens and involved matters of public concern.

62. At all times relevant hereto, the Plaintiff's interest in the speech in which they engaged far outweighed any countervailing interest which the Defendant may have had.

63. At all times relevant hereto, Plaintiffs' protected speech was a substantial and motivating factor in the adverse employment actions taken by Defendants against Plaintiff.

64. At all times relevant hereto, Plaintiffs had the right, protected by the First Amendment, to associate with Mr. Staley and others supportive of the recall petitions.

65. Notwithstanding that right, Defendants instructed Plaintiffs to refrain from associating with Mr. Staley and others supporting the recall or suffer the consequences.

66. In retaliation for Plaintiff's exercise of their right to freedom of assembly and association, Defendants took adverse employment actions against Plaintiffs including but not limited to changing their schedules, issuing unwarranted disciplinary notices and terminating their employment.

67. At all times relevant hereto, Plaintiffs had the right, protected by the First Amendment, to support the political candidates and issues of their choice.

68. At all times relevant hereto, Plaintiffs and Defendants supported different political factions within Flushing Township.

69 At all times relevant hereto, Defendants knew of Plaintiff's political affiliations.

70. The Plaintiff's political affiliations were a substantial and/or motivating factor in the adverse employment actions taken against Plaintiffs by Defendants.

71. At all times relevant hereto, Defendant, Flushing Township, had a custom and/or policy of permitting, acquiescing in and/or encouraging members of the Township Board to place their own interests above the constitutional rights of its employees.

72. The actions undertaken by Defendants were intentional and wilful and undertaken with reckless indifference to the constitutionally protected rights of Plaintiffs.

73. In connection with its decision to disband the police department and contract with Genesee County Sheriff's Department, the Township Board was acting in its capacity as the Township's legislative body and official final policymaker.

74. At all times relevant hereto, the acts of the Defendants were motivated by malice and bad faith.

75. As a direct and proximate result of aforedescribed constitutional violations, Plaintiffs have suffered significant damages including, but not limited to a loss of earnings

and benefits, emotional distress, anxiety, attorney fees and costs.

## COUNT II
## DEFAMATION

76. Plaintiffs restate and reallege paragraphs one through seventy-five as if fully set forth herein and in further support of their cause of action state as follows.

77. At all times relevant hereto, Plaintiffs were private, not public figures.

78. After the Defendant Board members voted to disband the Flushing Township Police Department, Defendant, Peck, told a Montrose Township elected official that the officers within the Flushing Township Police Department had pulled their guns on each other.

79. The statement made by Defendant, Peck, was untrue.

80. At all times relevant hereto, Defendant, Peck, knew or should have known that the aforedescribed statement was untrue.

81. This statement defamed the character and reputation of the Plaintiffs.

82. The false and defamatory statement made by Defendant, Peck, constitutes defamation per se.

83. Although Officer Bolin requested a written retraction, none was forthcoming.

84. During a meeting of the Genesee County Board of Commissioners, Defendant, Peck, stated during an open meeting that following the Flushing Township Board's decision to seek a contractual relationship with the Genesee County Sheriff's Department, the Board voted to immediately place the Flushing Township officers on administrative leave because

Mr. Peck feared for the safety of his family and himself due to potential retaliatory acts by the officers.

85. The aforegoing statement defamed the character and reputation of the Plaintiffs.

86. The false and defamatory statement made by Defendant, Peck, constitutes defamation per se.

87. At all times relevant hereto, Defendant, Peck, knew or should have known that there was no factual basis to assert a fear of retaliation from the Plaintiffs.

88. On multiple occasions, Defendant, Stevenson, described Office Farlin to third parties as an alcoholic and a possible user of illegal drugs.

89. The statements made by Defendant, Stevenson, about Officer Farlin were false and defamatory.

90. At all times relevant hereto, Defendant, Stevenson, knew or should have known that the statements made about Officer Farlin were untrue.

91. As a direct and proximate result of aforedescribed defamation, Plaintiffs have suffered significant damages including, but not limited to a loss of earnings and benefits, emotional distress, anxiety, attorney fees and costs.

**WHEREFORE**, your Plaintiffs pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of $75,000 plus punitive damages, exemplary damages, attorney fees, costs and pre- and post-judgment interest. Plaintiffs

further pray for such other and further relief in the premises as may be just and equitable.

>LEONARD & KRUSE, P.C.
>
>By:   /s/Kelly A. Kruse
>        Kelly A. Kruse (P45538)
>        4190 Telegraph Rd., Ste. 3500
>        Bloomfield Hills, MI 48302
>        (248) 594-7500
>        kkruse@leonardkruse.com

Dated: May 24, 2012

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

>LEONARD & KRUSE, P.C.
>
>By:   /s/Kelly A. Kruse
>        Kelly A. Kruse (P45538)
>        4190 Telegraph Rd., Ste. 3500
>        Bloomfield Hills, MI 48302
>        (248) 594-7500
>        kkruse@leonardkruse.com

Dated: May 24, 2012